IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ETHEL M. DOUGHERTY and  :
THOMAS DOUGHERTY,        :
        Plaintiffs,        :       3:CV 06-98
                  :
    v.               :
                  :
                  :      (JUDGE NEALON)
FARMERS NEW CENTURY     :
INSURANCE COMPANY,      :
                  :
      Defendant     :

FILED
SCRANTON
FEB 0 8 2007
MARY E. D'ANDREA, CLERK
Per_____
DEPUTY CLERK

## MEMORANDUM and ORDER

On January 12, 2006, Plaintiffs filed a Complaint seeking declaratory relief and alleging bad faith pursuant to 42 Pa. C.S.A. §8371. (Doc. 1). The Plaintiffs filed an Amended Complaint on January 18, 2006 (Doc. 2) and Farmers New Century Insurance Company ("Farmers") filed its answer on February 27, 2006. (Doc. 9). On October 26, 2006, plaintiffs filed a motion for leave to file a second amended complaint, including claims for breach of contract and for a violation of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). (Doc. 67). The court granted plaintiffs leave to amend to include claims under the UTPCPL but denied their motion as it pertained to the breach of contract claim. (Doc. 96).

On September 15, 2006, Farmers filed a motion for partial summary judgment

on the issue of coverage.[1] (Doc. 53).  A motion by plaintiffs for an extension of time

within which to file their brief in opposition was granted by Order dated October 2,

2006.  (Doc. 62).  Subsequently, Farmers filed supplements to its summary judgment

motion on October 11, 2006 (Doc. 64) and November 3, 2006 (Doc. 70) and on

December 4, 2006, plaintiffs filed their brief in opposition to Farmers' motion for

partial summary judgment (Doc. 77) as well as a cross motion for summary judgment

(Doc 80).[2] After receiving an extension of time, Farmers filed its brief in opposition

to plaintiffs' summary judgment motion (Doc. 92) and the reply pertaining to its own

motion for summary judgment.  (Doc. 90).  Finally, on January 17, 2007,  plaintiffs

filed their reply brief.  (Docs. 94 &95).

The cross motions for summary judgement are now ripe for disposition.

**FACTUAL BACKGROUND**

This analysis will adopt relevant facts that appear to be unchallenged and

uncontradicted.  On February 21, 2002, Ethel M. Dougherty and Thomas Dougherty

(collectively "Plaintiffs") purchased automobile insurance coverage from Farmers

through the Florey Insurance Agency.  Initially the plaintiffs carried insurance on

---

[1] Farmers initially filed a motion for partial summary judgment (Doc. 18) on May 1, 2006. That summary judgment motion was dismissed without prejudice on May 11, 2006 in order to allow the parties additional time to complete relevant discovery.  (Doc. 23).

[2] Plaintiffs did not file a separate brief in support of their motion for summary judgment but rather incorporated the arguments set forth in their brief in opposition.

four (4) vehicles but one of the automobiles was removed from coverage on March 14, 2003, leaving three (3) insured vehicles. (Doc. 71-1, p.19). Although the insurance for each vehicle was purchased simultaneously, the vehicles were each insured under separate policies, as is Farmers' custom in Pennsylvania.[3] On February 21, 2002, the day of the purchase, Ethel Dougherty left the Florey agency in possession of a "binder" evidencing coverage by Farmers for stacked UIM coverage on the four (4) family vehicles. (Doc. 77-1, p. 15). On March 21, 2002, a policy for each of the insured vehicles was mailed to the Doughertys but Thomas Dougherty testified that he was unable to find these policies. (Doc. 91-1, p. 4; Doc. 90, Ex. B1; Doc. 78, p.16).

Ethel Dougherty ("plaintiff" or "plaintiff insured") elected and paid a premium for stacked underinsured motorist coverage for each policy (Doc. 54, p. 2).[4]   This election was confirmed by Ethel's signature on a single waiver of stacking form.[5]

---

[3] Policy No. 26-16209-53-09, issued to Ethel Dougherty, covered a 1998 Suzuki Esteem GLX. (Doc. 54. Ex. A). Policy No. 26-16209-53-10, issued to Ethel Dougherty and Thomas Dougherty, covered a 1992 Chevrolet panel van. (Doc. 54, Ex. B). Policy No. 26-16209-53-11, issued to Ethel Dougherty and Patrick Dougherty, covered a 1993 Mazda Protégé. (Doc. 54., Ex. C).

[4] "Underinsured motorist benefits ... provide coverage in the event that an insured is involved in an accident with a tortfeasor who has inadequate liability coverage. Nationwide Mut. Ins. Co. V. Riley, 352 F.3d 804, 805, n.1 (3d Cir. 2003).

[5] The form which Ethel Dougherty signed is commonly referenced as a waiver of stacking form. Ethel Dougherty completed the portion of this form which provided for the retention of stacking. Accordingly her signature on this document does not indicate that she waived stacking but rather that she opted to retain stacking.

3

(Doc. 77, Ex. 6). The premium for this stacked insurance was higher than the premium for unstacked insurance.[6] (Doc. 77-1, p.19, Doc. 91-1, p.7).   Each of the single vehicle policies provided for stacking of underinsured coverage and each contained a household exclusion. (Doc. 54, Ex. A, Ex. B, Ex. C).[7]   The household exclusion states:

> We do not provide Underinsured Motorists Coverage for "bodily injury" sustained:
> By you while "occupying" or when struck by, any motor vehicle which is not insured for this coverage under this policy.  This includes a trailer of any type used with that vehicle.

(Doc. 54, Ex. A., p. 34,  Ex. B., p.34,  Ex. C., p.34).

At the time of purchase, Ethel Dougherty did not realize that each of her vehicles was insured under a separate policy. (Doc. 91, Ex. 28, pp. 18 & 48).   In their brief in opposition, relying on Ethel Dougherty's deposition testimony,  plaintiffs alleged that Joanne Weiss, Ethel's insurance agent, told Ethel that she could stack coverage if she was injured while occupying one of the vehicles that she insured with Farmers on February 21, 2002.  (Doc. 77-1, p.7 *referencing Deposition of Ethel*

---

[6] Stacking allows an insured to add the coverage available from different vehicles and/or different policies to provide a greater amount of coverage available under any one vehicle or policy. Potentially an insured with four (4) separate vehicles or four (4) separate polices could recover the underinsured benefits allotted to each vehicle/policy as opposed to only the underinsured benefits available for her vehicle/policy.

[7] Since Farmers does not issue policies without a household exclusion, the fourth policy presumably contained a household exclusion although that policy is not at issue in this case nor has it been made a part of the record.

*Dougherty, p.18*).  However, at that particular point in her deposition, she testified

that Weiss explained to her that the stacking she had opted for would allow the

Doughertys "to stack our coverage on the number of vehicles we had on the policy." [8]

(Doc. 91, Ex. 28, p. 18).  This testimony differs from that which the plaintiffs

represented in their brief.

    Ethel Dougherty admitted that Joanne Weiss never mentioned or explained the

---

[8] Throughout the course of her deposition, Ethel Dougherty testified that Weiss told her that she was entitled to "stack our coverage on the number of vehicles we had on the policy." (Doc. 91, Ex. 28, p. 18). She reiterated this fact by providing the following answers: "I could apply the amount of coverage times the amount of vehicles that were on my policy" (Doc 91, Ex. 28, p. 49); and "She told me that I could multiply the number of vehicles on my policy." (Doc. 91, Ex. 28, p. 51).

Q.    "Did Joann Weiss tell you that you could stack coverages if you were injured in your vehicle?"
A.    "Yes." (Doc. 91, Ex. 28, p. 52).

Q.    "Now, before there was a question that was asked to you that - did you understand, did Joann Weiss explain to you what stacked underinsured coverage meant when you signed this selection form?:
A.    " That if I was injured in my own vehicle, I could stack my coverage." (Doc. 91, Ex. 28, p. 57).

Q.    "Did you expect that if you were injured in your own vehicle that you would be able to stack your coverages for the sum of the limits for all of the vehicles that you had insured with Farmers?"
A.    " Yes, I did." (Doc. 91, Ex. 28, p. 59) .

Nonetheless, when questioning by opposing counsel resumed, Ethel returned to her original stance as evidenced by the following testimony.
Q.    "What specifically did [Joann Weiss] say to you?"
A.    "She told me that if I elected to go with stacked coverage, if I was hurt in my own vehicle, that I could multiply the times of vehicles on the policy, that I could take and multiply the vehicles that's on the policy - I'm not wording this right." (Doc. 91, Ex. 28, pp. 60-61).

5

significance of the household exclusion to her. (Doc. 91, Ex. 28, p. 53). However, she also remembers little about the specifics or generalities of what Weiss did explain to her. (Doc. 91, Ex. 28, p. 24). Farmers never sent a letter to Ethel Dougherty specifically advising her of the household exclusion and its consequences. (Doc. 77-1, p. 21, Doc. 91-1, p. 8). The selection form for stacking states "coverage is generally described here. Only the policy provides a complete description of the coverages and their limitations." (Doc. 77-1, Ex. 7).

In July 2003, Ethel Dougherty was injured in an automobile accident while driving her 1998 Suzuki Esteem GLX, which was insured under Farmers' policy 26-16209-53-09. (Doc. 77-1, p. 20, Doc. 91-1, p.8). Following this accident, Ethel claimed, and Farmers' ultimately denied, stacked underinsured motorist benefits under Farmers' policies 26-16209-53-10 and 26-16209-53-11. Coverage was denied based on the household exclusion.

At the time plaintiffs purchased their policies and up to November 28, 2005, Farmers had a practice of non-enforcement of the household exclusion when the insured had paid for stacking and was subsequently injured while occupying a household vehicle. This practice remained in place when the plaintiffs renewed their policies in February of 2003. Likewise, this remained Farmers' practice at the time of Ethel Dougherty's accident in July 2003.

On May 12, 2004, Jeri Minter, in her capacity as Farmers' corporate designee, testified that Farmers did not apply the household exclusion when a premium was paid for stacking. *See* <u>Ginther v. Farmers New Century Ins. Co.</u>, 03-CV-1365 (M.D. Pa. 2003) (Nealon J.). Ethel Dougherty did not know about the <u>Ginther</u> case and its discussion of the household exclusion until after her accident.[9] (Doc. 91, Ex. 28, pp. 36-37). On August 24, 2005, Farmers' adjuster, Deborah Reichert, notified plaintiffs' counsel that $300, 000.00 in underinsured coverage was available for plaintiff insured's claim. (Doc. 77-1, Ex. 1). This amount represented the stacked values of the three individual vehicle policies which remained from plaintiffs' original insurance purchase in February 2002. According to plaintiffs, this representation evidenced Farmers' intention to refrain from enforcing the household exclusion and to permit stacking.

---

[9] In <u>Ginther</u>, this court recognized the validity of a household exclusion in a Farmers' policy. Despite the holding, the plaintiffs rely on a footnote in the court's opinion in support of their argument. They argue that the footnote identifies a distinction which applies to the instant case. Specifically, plaintiffs cite to footnote 8 which reads, in relevant part, "were this a case where Farmers attempted to deny coverage that was purchased and paid for based on the household exclusion, the exclusion would not withstand a public policy challenge."

This statement was not only dicta as to the issue in the <u>Ginther</u> case but it was inartfully expressed. It was in contrast to the authority cited in the body of the opinion holding that an identical household exclusion in a separate policy was wholly compatible with public policy and the Motor Vehicle Financial Responsibility Law. <u>Carter v. State Farm Mut. Auto. Ins. Co.</u>, 287 F. Supp. 2d 587 (E.D. Pa. 2003); <u>State Farm Mut. Auto. Ins. Co. v. Coviello</u>, 220 F. Supp.2d 401 (M.D.Pa. 2002).Upon reflection it was probably meant to address a hypothetical where the premium would be higher if there were no household exclusion in the policy. In fact, there was testimony by Jeri Minter that premiums would be increased if the household exclusion were removed.

Consequently, the precise language used therein was misleading and did not reflect the reasoning employed in deciding that case.

Subsequently, on November 21, 2005, Farmers' Pennsylvania Claims Manager, Glen Judge, sent Farmers' agent, Susan Orchard, an e-mail indicating that the household exclusion excluded stacking of coverage for household vehicles regardless of the insured's selection of and payment for stacking. (Doc. 77-1, Ex. 4). As a result Farmers refused to provide stacked coverage for plaintiff insured's claim. Farmers concedes that it changed its practice regarding enforcement of the household exclusion on or about November 28, 2005.

## LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56( c). *See also* Turner v. Schering-Plough Corp., 901 F.2d 335, 340-41 (3d Cir. 1990). The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552 (1986); Young v. Quinlan, 960 F.2d 351, 357 (3d Cir. 1992). Once such a showing has been made, the nonmoving party cannot rely upon conclusory allegations in its pleadings or briefs to establish a genuine issue of material fact. Rather, the nonmoving party must go beyond the pleadings and offer specific facts contradicting the facts averred by the movant which indicate that there is a genuine issue for trial. *See* Lujan v. Nat'l Wildlife Fed'n, 497

8

U.S. 871, 888, 110 S. Ct. 3177, 3188 (1990); Fed. R. Civ. P. 56(e). "Once the moving party has carried the initial burden of showing that no genuine issue of material fact exists, [citation omitted] the nonmoving party . . . 'must make a showing sufficient to establish the existence of every element essential to his case, based on the affidavits or by the depositions and admissions on file.'" Pastore v. Bell Tel. Co. of Pa., 24 F.3d 508, 511 (3d Cir. 1994) *quoting* Harter v. GAF Corp., 967 F.2d 846, 852 (3d Cir. 1992).

To determine whether the nonmoving party has met his or her burden, the court must focus on both the materiality and the genuineness of the factual issues raised by the non-movant. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510 (1986) (emphasis in original). A disputed fact is material when it could affect the outcome of the suit under the governing substantive law. Id., 477 U.S. at 248, 106 S. Ct. at 2510. A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. If the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio, 475

9

U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289, 88 S. Ct. 1575, 1592 (1968)).  All inferences, however, "should be drawn in the light most favorable to the nonmoving party, and where the nonmoving party's evidence contradicts the movant's, then the non-movant's must be taken as true."  Pastore, 24 F.3d at 512 (quoting Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied*, 507 U.S. 912, 113 S. Ct. 1262 (1993).

The standard for cross-motions for summary judgment is the same as for individual motions for summary judgment. The court handles cross-motions as if they were two distinct, independent motions. Rains v. Cascade Industries, Inc., 402 F.2d 241, 245 (3d Cir.1968). Thus, in evaluating each motion, the Court must consider the facts and inferences in the light most favorable to the non-moving party. Goodman v. Mead Johnson & Co., 534 F.2d 566 (3d Cir.1976).

## DISCUSSION

The only issue before the court for determination on these cross motions for partial summary judgment is whether the household exclusion, by its terms, is valid and therefore enforceable.  Accordingly, plaintiffs' allegations of bad faith and of violations of the UTPCPL will not be addressed.  These allegations involve facts that

are separate and apart from the validity of the household exclusion. As such, a finding that the household exclusion is valid does not necessarily foreclose the possibility of a successful bad faith or UTPCPL claim.

## A. Farmers' Motion for Summary Judgment

### *(1) Reasonable Expectations v. Plain Meaning*

The parties disagree on how the language of the household exclusion should be interpreted. Plaintiffs argue that the reasonable expectations of the insureds should be applied when interpreting any terms of an insurance contract, including an exclusion. They submit that such an analysis would result in a conclusion that the exclusion is an unenforceable limitation of the stacking for which Ethel Dougherty paid. On the other hand, Farmers argues that the plain meaning of the household exclusion should control.

The touchstone for interpreting the meaning of language in insurance contracts is the reasonable expectation of the parties, however, the insured cannot complain that her reasonable expectations were frustrated when the language of the policy is clear and unambiguous. Bensalem Township v. International Surplus Lines Ins. Co., 38 F.3d 1303, 1309 (3d Cir. 1994). Generally the reasonable expectations of the parties are best reflected by the plain meaning of the contract terms. Reliance Ins. Co. v. Moessner, 121 F.3d 895, 903 (3d Cir. 1997). However, there are exceptions to this

general rule, and if one of these exceptions applies, then the reasonable expectations

of the parties should be considered in interpreting the language of the household

exclusion. Likewise, if the terms of a contract provision are ambiguous, then a

reasonable expectations analysis is merited. Therefore, it must be determined

whether the language of the exclusion is ambiguous or whether another exception to

the plain language rule applies.

      *(a)    Ambiguity*

The household exclusion states:

> A.    We do not provided Underinsured Motorists Coverage for "bodily
> injury" sustained:
> 1. By you while "occupying," or when struck by, any motor vehicle
> you own which is not insured for this coverage under this policy. This
> includes a trailer of any type used with that vehicle.

(Doc. 54, Ex. B, p. 34)

Although plaintiffs argue that the reasonable expectations of the parties should

override the express provisions of the insurance contract, they do not present an

extensive argument that the language of the exclusion is ambiguous. (Doc. 77-1, p.

13). Nonetheless, the language should be reviewed to ensure that the language is

clear and unambiguous. If the language is unambiguous then it expresses the intent

of the parties unless another exception to the plain language rule applies. *See*

Bensalem Township v. International Surplus Lines Ins. Co., 38 F.3d 1303 (3d Cir.

1994).

Terms are ambiguous if they are "reasonably susceptible of different construction and capable of being understood in more than one sense." Medical Protective Company v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999). At the time of her application, Ethel Dougherty did not have any background in insurance contracts. (Doc. 91, Ex. 28, p. 46). Despite this, it is difficult to imagine that she had an alternate interpretation of the language of the household exclusion. Ultimately, she may not have fully grasped the effect of the exclusion but it seems unlikely that this confusion would have been based on the terms of the exclusion. The terms of the household exclusion are not ambiguous and must be given their plain meaning "unless to do so would be contrary to clearly established public policy." Nationwide Mutual Ins. Co. v. Roth, 2006 WL 3069721, *7 (M.D. Pa. 2006) citing Alderson v. Nationwide, 884 A.2d 288, 290 (Pa. Super. 2005).

   (b)    Public Policy

An exception to the plain language doctrine exists when the language of an exclusion conflicts with public policy. Plaintiffs argue that the household exclusion operates in violation of the Motor Vehicle Financial Responsibility Law ("MVFRL") which requires that stacking be offered to insureds. However, "it is well settled that household exclusions ... are wholly compatible with public policy and, specifically,

13

with the MVFRL." State Farm Mut. Auto. Ins. Co. v. Nabit, 287 F. Supp. 2d 587,

589 (E.D. Pa. 2003).

The policy behind the MVFRL is to limit the increasing cost of insurance.

Accordingly, the household exclusion does not per se violate the MVFRL and in fact

bolsters its policy.[10] Prudential Property & Casualty Ins. Co. v. Colbert, 813 A.2d

747, 754 (Pa. 2002).   Household exclusions have been upheld in numerous recent

cases "notwithstanding express argument that" they violate "public policy."

Nationwide Mutual Ins. Co. v. Roth, 2006 WL 3069721, *6 (M.D. Pa. 2006)

(upholding household exclusion as prohibiting stacking when it would otherwise be

available in a case involving multiple policies issued by the same insurer); *See also*

Alderson v. Nationwide, 884 A.2d 288 (Pa. Super. 2005) (upholding household

exclusion despite policy arguments and recognizing irrelevance of fact that all

policies were issued by same insurer); State Farm Fire & Casualty Co. v. Craley, 844

A.2d 573 (Pa. Super. 2004) *affirmed* 895 A.2d 530 (2006) (recognizing that the

household vehicle exclusion is valid and enforceable and that is does not violate

public policy regardless of the rules relating to stacking).   By including the household

---

[10] Plaintiffs advance an argument that the Farmers' policies impermissibly limit the term "insured" from the definition set forth in the MVFRL.  Assuming arguendo that the Farmers' policy did limit the definition of "insured" the distinction does not affect the application of the household exclusion because even if the claimant were an insured under the broader definition, the household exclusion can still preclude coverage. Prudential Property & Casualty Ins. Co. v. Colbert, 813 A.2d 747. 751 (Pa. 2002).

exclusion, Farmers has only limited its exposure under the bounds of the MVFRL. While the Doughertys were not permitted to stack coverage if a household vehicle was involved in an accident, they were entitled to stack the coverage provided by the Farmers' policies if one of them was injured while in a non-household vehicle. Such a limitation is acceptable and can be differentiated from a situation where no stacking is offered in violation of the MVFRL and public policy.

However, plaintiffs' public policy argument does warrant consideration since some cases have also held that the determination of a public policy violation turns on the individual facts of the case. Nationwide Mutual Ins. Co. v. Schmidt, 307 F. Supp. 2d 674, 678 (W.D.Pa. 2004); Prudential Property & Casualty Ins. Co. v. Colbert, 813 A.2d 747(Pa. 2002). Accordingly, an analysis of the facts particular to this case will be conducted. In the instant case, Ethel Dougherty had three (3) individual automobile policies each issued by Farmers. Each of the policies provided for stacking of underinsured motorist benefits and each also included a household exclusion. Farmers was aware of the existence of the three (3) policies and the fact that Ethel Dougherty had paid for stacking. Plaintiffs argue that this cumulative knowledge demonstrates that Farmers was completely apprised of the risk it assumed by insuring the three (3) Dougherty vehicles and, accordingly, that the premium

15

which Ethel Dougherty paid would have covered this risk.[11]  The public policy

determination should be undertaken with a goal of preventing insureds from receiving

gratis coverage and simultaneously ensuring that insurers are not compelled to

subsidize unknown and uncompensated risks.  Schmidt, 307 F. Supp. 2d at 679.  In

light of this tenet of law, plaintiffs contend that public policy dictates that Ethel

Dougherty be provided the stacking for which she paid and for which Farmers was

accountable.

However, plaintiffs overlook the fact that Farmers also knew that each of the

policies included a household exclusion which would limit the extent of stacking

available to the insured.  As a result, the premium which Farmers charged Ethel

Dougherty was higher than a premium for unstacked coverage but presumably was

less than a premium for stacking without the household exclusion.  *See* State Farm

Mutual Auto. Ins. Co. v. Bish, 2006 WL 2773474, *5 (W.D. Pa. 2006) (addressing

---

[11] Farmers certainly knew that its policies included household exclusions which would exempt household vehicles from coverage.  Likewise, plaintiffs argue that Farmers knew that, according to prior practice, household exclusions were not enforced when the insured paid for stacking.  Accordingly, plaintiffs maintain that the price of non-enforcement of the household exclusions, i.e. the cost of providing stacked coverage on household vehicles, was factored into the premium that Ethel Dougherty paid despite the fact that her policies included household exclusions.

The deposition testimony of Jeri Minter, offered in the Ginther case, established that Farmers did not issue policies without household exclusions.  (Doc. 77, Ex. 9, p. 8).  Likewise, the evidence presently of record indicates that Farmers charged premiums either for stacked or unstacked coverage.  (Doc. 91, Ex. 14 & Ex. 20).  There were not gradations of stacked coverage for which Farmers charged different premiums since stacked coverage without a household exclusion was not available to Farmers' insureds.

plaintiffs' argument that household exclusion is unenforceable when full UIM premiums are paid on all family vehicles and users since enforcement in such a case would not result in cost savings to the insured and dismissing the argument by explaining that premiums would presumably be higher if the policies did not contain household exclusions). Accordingly, non-enforcement of the household exclusion would provide the plaintiffs with an extra benefit for which they have not paid.

While the plaintiffs concentrate a great deal of attention on the fact that Farmers maintained a practice of non-enforcement of the household exclusion until November 2005, this fact is largely irrelevant to the public policy determination and instead pertains primarily to the reasonable expectations of the parties. Farmers' practice prior to November 2005 is only significant if it indicates that Farmers charged Ethel Dougherty a premium which included coverage for stacking of household vehicles. However, the terms of the policies make no indication of this fact. Further, Farmers' prior practice would only effectuate a waiver of its right to enforce the provision if its conduct was sufficient to justify a reasonable belief on the part of the insured that the insurer would not insist on compliance with the policy terms.[12] CJS INSURANCE § 816.

---

[12] There has been no showing that Ethel Dougherty had any knowledge of Farmers' routine non-enforcement of the household exclusion. The only source of such information that can be divined from the record is the testimony of Jeri Minter, in the Ginther case. Jeri Minter provided the relevant deposition testimony on May 12, 2004, long after the completion of Ethel Dougherty's

Neither the general law nor the specific facts of this case indicate that the household exclusion violates public policy. Therefore, the exclusion is valid unless another exception applies.

### (c)    Other Exceptions Requiring a Reasonable Expectations Analysis

The provisions of an insurance policy should be interpreted in terms of the parties reasonable expectations when the insured has requested one type of coverage and received another. In such a case the insurance agent has a duty to notify the insured. Tonkovic v. State Farm Mutual Ins. Co., 521 A.2d 920, 925 (Pa. 1987). Ethel Dougherty requested and received stacked underinsured motorist coverage. Had she been injured while a passenger in a friend's vehicle then she would have been able to stack her recovery. The household exclusion limitation of her ability to stack does not mean that she did not get the coverage which she requested. There is no indication that Ethel Dougherty specifically requested stacking for household vehicles. In fact, when asked at her deposition whether she asked for underinsured motorist coverage that could be stacked without any kind of exclusion, she responded "I don't remember." (Doc. 91, Ex. 28, p. 23).

Neither is this a case where the insurer created a reasonable expectation of coverage which was not supported by the terms of the policy. At her deposition Ethel

insurance application on February 21, 2002. (Doc. 91, Ex. 9).

18

Dougherty testified that her insurance agent, Joanne Weiss, explained to her that the stacking she had opted for would allow the Doughertys "to stack our coverage on the number of vehicles we had on the policy." [13] (Doc. 91, Ex. 28, p. 18).  While the household exclusion was not discussed, this particular statement was not inaccurate and, without more, does not indicate an inappropriate comment or an intention to mislead.  Accordingly, the Farmers' agent appeared to explain exactly the extent of coverage available, as supported by the terms of the policy.

Further, Ethel Dougherty can not argue that she is excused from the exclusion merely because she failed to read it.  Generally, a contract of insurance is not construed to relieve the insured from policy exclusions on the mere ground that she has failed to read them.  See WILLISTON ON CONTRACTS, §49:21; Standard Venetian Blind Co. v. American Empire Ins. Co., 469 A.2d 563, 566 (Pa. 1983).  An exception to this general rule occurs if the insurance agent has misrepresented the extent of coverage to the insured. [14]  Tran v. Metropolitan Life Ins. Co., 408 F.3d 130,

---

[13] As previously discussed, Ethel Dougherty provided somewhat conflicting testimony on the issue of Joanne Weiss' explanation of stacked coverage.  This conflict is irrelevant to the determination of the facial validity of the household exclusion although it may be pertinent to an argument regarding bad faith or a claim under the UTPCPL.

Although plaintiff testified that she expected that she would be able to stack her coverages for the sum of the limits for all of the vehicles that she had insured with Farmers, (Doc. 91, Ex. 28, p. 59), this expectation is not in accord with her testimony regarding the exact explanation offered by Weiss.

[14] It is not necessary at this time to determine whether Farmers or its agent(s) engaged in fraud when representing the terms of Ethel Dougherty's insurance coverage.  If a determination is to be made on that issue it must remain until the plaintiffs' claims for bad faith and a UTPCPL violation

137 (3d Cir. 2005). However, from the evidence of record presently, it cannot be concluded that Agent Weiss misled Ethel Dougherty as to the extent of stacked coverage available.[15]

Finally, this is not a case where the insurer unilaterally inserted a change in the Doughertys' renewal policy. An insurer may not make unilateral changes to a policy without notifying the policy holder of the change and ensuring that the policy holder understands the significance of the changes. Highlands Ins. Group v. Van Buskirk, 2000 WL 1659918, *5 (E.D. Pa. 2000), aff'd, 281 F.3d 221 (3d Cir. 2001) (TABLE); Tonkovic, 521 A.2d at 923. If a change is made at renewal than the insured should be permitted an opportunity to show he had a reasonable expectation of coverage despite the unambiguous language of the policy added during renewal. Bensalem Twp., 38 F.3d at 1311. The household exclusion in this case was included in each of the original Farmers' policies. To the extent that any change was made regarding the household exclusion it pertained to Farmers' decision to enforce it and not to the terms of the policy. Even assuming, for the sake of argument, that a change of

---

are further considered. As previously discussed, the within opinion only addresses the validity of the household exclusion.

[15]Construing the facts in a light most favorable to the plaintiffs, it is clear that Ethel Dougherty was initially unaware that her vehicles were each insured on separate policies. Nevertheless, that does not create a reasonable expectation of stacked coverage for household vehicles. Moreover, a further analysis of this factor will be reserved until plaintiffs' bad faith argument is presented.

20

practice is comparable to a change in terms, Ethel Dougherty could not have had a reasonable expectation that the household exclusion would not be enforced. The terms of the policy provided the exclusion as a limitation on stacking; the insurance agent indicated that stacking would allow Ethel to stack recovery for each car on an individual policy; and finally, as already discussed, Ethel would not have reason to know about Farmers' non-enforcement practice until after her accident, when she heard about Jeri Minter's testimony.

Since no exception to the plain language rule applies, the terms of the household exclusion must be given their plain meaning. Accordingly, there is no need to consider the reasonable expectations of the parties to the contract. As such, the clear, unambiguous language of the exclusion applies to exclude coverage in the instant case.

### (2) Benefit of Higher Premium

The plaintiffs also contend that they have not received any benefit for the higher premium which they paid for stacked coverage. However, an insured gets the benefit of the bargain when he does not waive stacking and his policy contains a household exclusion because he can stack coverage in all but the situations set out in the exclusion. Roth, 2006 WL 3069721 at *8. Even when a full premium is paid on each policy, the insured still gets a benefit because the premium would presumably be

21

higher if no exclusion applied.[16]  Bish, 2006 WL 2773474 at *5.

This argument dovetails with the plaintiffs public policy argument and must

likewise be rejected.  It is undisputed that Farmers charges a higher premium for

stacked coverage than it does for unstacked coverage and that Ethel Dougherty paid

this higher premium.  The fact that Ethel did not have stacked coverage for household

vehicles does not negate the fact that she did, in fact, receive stacking.  Farmers

permissibly limited its exposure for coverage according to the MVFRL.  This is not a

situation in which Farmers failed to provide an option for any stacking in violation of

both public policy and the MVFRL.

### (3) Estoppel and Waiver

Finally, plaintiffs argue that Farmers is estopped from enforcing the household

exclusion because they previously maintained a practice of non-enforcement.  An

insurance company is estopped from asserting a breach of a condition or a forfeiture

if it has acted in a manner which is sufficient to justify an insured to reasonably

believe that the company will not insist on compliance with certain policy provisions.

CJS INSURANCE § 816.  A waiver of a right to assert a breach of condition need not

be express, but may be implied from conduct or acts on the part of the company

---

[16] It should be noted that the instant case is distinguishable from cases in which a party only applies for UIM coverage on one policy and then tries to stack other policies which do not have UIM coverage, to get coverage for which he did not pay.

22

which are sufficient to justify a reasonable belief on the part of the insured that the company will not insist on compliance with policy provisions. CJS INSURANCE § 816.

As discussed above, Ethel Dougherty has not made any showing that she knew of Farmers' enforcement practices until after the litigation in this case commenced and, therefore, she could not have reasonably relied on Farmers' previous practice of non-enforcement. Accordingly, Farmers cannot be deemed to have waived its right to enforce the provision, nor can it now be estopped from enforcing the household exclusion.

## B. Plaintiffs' Motion for Summary Judgment

The issues discussed in consideration of Farmers' motion for summary judgment are applicable in all respects to the plaintiffs' motion for summary judgment. Based on the analysis set out in the above discussion of Farmers' motion, the plaintiffs' cross-motion for summary judgment will be denied.

## CONCLUSION

The terms of the household exclusion are not ambiguous and they do not violate public policy. As a result, the language of the exclusion must be given its plain meaning. Therefore, the household exclusion operates as a valid limitation of

23

the stacking for which Ethel Dougherty paid and provides a proper basis for denial of her claim. Accordingly, Farmers' motion for partial summary judgment (Doc. 53) will be granted and plaintiffs' motion for partial summary judgment (Doc. 80) will be denied.

s/ William J. Nealon

Date: February 8, 2007                                    United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ETHEL M DOUGHERTY and        :
THOMAS DOUGHERTY,           :
             Plaintiffs,          :      3:CV 06-98
                                         :
      v.                           :
                                         :      (JUDGE NEALON)
FARMERS NEW CENTURY       :
INSURANCE COMPANY,         :
                                         :
          Defendant         :

## ORDER

**AND NOW**, this  8th  day of February, 2007, in accordance with the

accompanying Memorandum of this date, **IT IS HEREBY ORDERED THAT:**

(1)     Defendant's motion for partial summary judgment (Doc. 53) on the

issue of the validity of the household exclusion is GRANTED.

(2)     Plaintiffs' motion for partial summary judgment (Doc. 80) is DENIED.


s/ William J. Nealon

United States District Judge